Okay, United States v. Varazo. Ms. Moore. Good morning, Your Honors, and may it please the Court. I am Lorraine Moore on behalf of the appellant, Constantine Varazo II, who is incarcerated. Mr. Varazo appeals his conviction for drug and firearm offenses and the resulting 228-month prison sentenced. We raised three issues in our briefing, but for the purpose of this morning, I would like to rest on the brief on the first issue and primarily focus on the latter two issues, whether the District Court abused its discretion in admitting a book bag containing contraband over a chain of custody objection and whether unobjected to hearsay statements regarding the discovery of this book bag amount to plain error. We are asking the Court this morning to settle the question of whether the government... Can I stop you right there, because I had a question about your third issue, and I understand why you're not arguing about the Chapman issue, because he did testify and that cured the error, so that's very smart. Agreed. Okay, so now we go to the book bag and understanding chain of custody, okay, about that. But can you clarify for me on the third one, you're just saying the hearsay statements aren't admissible and they should have been not admitted, and so that was a reversible error. You're not charging, you're not attacking the admission of the book bag under that hearsay testimony, are you? So yes, actually, Judge Holt. I am. Okay, because I couldn't tell whether it was just the chain of custody on the book bag or the admissibility of the book bag because of these hearsay statements. Yes, we are. For the reason, in the trial judge's order denying... In the district court, because you didn't even object to the statements, right? Correct, correct. In the order denying Mr. Ferrazio's motion for new trial, the district judge specifically found that while Russell Chapman's statement was hearsay, he agreed that that was hearsay, he nevertheless argued that it was not error because the book bag would have come into evidence anyway, which contained the contraband, would have come into evidence anyway under gaps in the chain of custody. Let's get to the chain of custody issue because that's probably the one that at least is somewhat preserved. I think there's maybe a slight preservation question, but let's assume for the moment it's preserved. And that's dispositive, at least as to the gun count, I think, and maybe part of the drug count. So as I understand it, there's a gap between a backpack that is found by a probation officer on the side of the road to then it getting to one deputy of the Randolph County Sheriff's Office to then getting to the main deputy to then the property clerk who then opened it up and looked at it and cataloged the items inside. And so the argument is that there's a gap at the initial stage from however long that backpack was there until it got to the probation officer, right? Is that as I understand it? And just to correct your initial statement, the probation officer is the one who took custody of it from the witness who purported to find it. That's why I kept that out. I understand that. But as you point out, that's hearsay. So I'm keeping that out. So the gap is from whoever finds it or it being there on the side of the road to the probation officer taking custody of it. Now, as you know, our law says that gaps in the chain of custody go to weight, not admissibility. And what you say is, well, this one's a little different because it's the initial. But then you have some case law which seems to suggest that even gaps in the initial chain of custody are not problematic and go to weight and admissibility, especially where there's some other evidence of indicia that at least colorably fills in that gap. Is that as you understand our law? So that's correct, Your Honor. But those cases are very distinguishable between this case. Well, tell me how – start with Henderson for me. Because Henderson is – it's a real short part of the opinion. I think it's only two or three sentences that deal with it. And this is on pin site 160 of that opinion. It says, quote, Appellant Roosevelt Henderson also argues that the fingerprint evidence is admissible because the government failed to prove chain of custody for the Schlurr check from the time it was cached until the time it was received by the government agent. Next sentence, it is well settled that whether the government has proven an adequate chain of custody goes to the weight rather than admissibility of the evidence, period. That's correct. But, Your Honor, Judge, in that case, though, the court specifically found that a witness, his co-defendant, his co-conspirator, specifically testified that Henderson had possession of the check at the time of the commission of the crime. But that – I will say, you're right that in the section above that, the argument above that, that statement is made. But in the relevant portion dealing with the chain of custody issue, I read it as just being those two sentences and nothing beyond that. In other words, the court didn't rely on that fact to then hold that a gap in the chain of custody is somehow, at the initial stage, is dispositive and can't come in. So I just don't know what to make of that. Well, I think – I think that you have to look at each one of these facts that – cited by the appellant as well as the government, you have to look at the facts of the case because generally the facts where the government – excuse me, where the courts hold that minor gaps in the chain of custody go to weight, not to admissibility, you're talking about, again, except for therefore, but you're generally talking about gaps where In the middle. Well, in the middle, where after gaps with inter-law enforcement agency or intra-agency. And I understand government takes control and then there's a gap in the chain. Correct. But the cases – but Henderson – Henderson is one of those cases where the issue was, where was this check prior to it coming into evidence? And you – you have to look at the facts because the language in each opinion is so sparse on those issues. But there – I mean, every opinion has a lot of facts, but it – what's relevant for us is, as I understand it in looking at holdings, are those facts that were material to the court. And the only fact that it talked about in this section of the opinion dealing with this argument is that the argument that it was inadmissible because – and it accepts this – the government failed to prove that – the check from the time it was cashed until a government agent took it. In other words, at the beginning phase. And there, the court said that that wasn't dispositive. So I think that's my problem. But let me – fast forward. Let me assume that there needs to be something there, some evidence. Here, as I understand the record, and correct me if I'm wrong, there's testimony from the co-conspirator that a drug deal happened in the back of the car. She doesn't know exactly what happened, but a drug deal happened. They drove to it, and it happened. There's testimony that when they were stopped, or when the police officer was behind, your client told the driver, go, go, go, I have to dump this stuff, or something like that. There's testimony that stuff was dumped, both from the co-conspirator and from the officer who took Chase. There's testimony that this bag was found on the very route that the Chase happened. And there's testimony that there is some indicia of your client's information inside the bag. None of what I said is hearsay, and none of what I said – and everything I've said is admissible evidence. How does that not indicia that might fill in the gap, assuming we need something like that? Well, again, because you have to assume that – well, you have to ignore the four-day delay between the time that the evidence was located and the time the Chase occurred. Wouldn't that be true in Henderson, though? In other words, even assuming it was relevant that the co-conspirator saw him with the check, there's still some – I mean, you know how banking works. You send a check in. It gets routed to, like, a main bank, and then to D.C., and then back to the bank that is cashed on, and through their main thing. And so there could be days before a government agent takes possession of that check, right? Well, that's true, but – that's true in that situation. But here, again, the only evidence, the most damning piece of evidence, I'll say, is this cell phone inside this book bag. And, you know, nothing else in the book bag tied my client to the crime. DNA. No fingerprints. No DNA. Even the contents of the cell phone, which was searched, failed to disclose any text messages newer than six months. I mean, the oldest text message was six months. And so that certainly does not corroborate his co-conspirator's testimony against him that he organized this drug deal, that he instructed them where to go. And it just doesn't – it just doesn't corroborate it. And so – Let me ask you this. Let's assume I disagree with you on the chain of custody issue, and I think there was sufficient evidence for it to come in. On the hearsay side, as I understand your hearsay argument and your plain error argument, what you're saying is not that he wouldn't have been convicted but for the hearsay, but that the bag wouldn't have come in but for that, and the bag was an essential piece of evidence that convicted him, and so that's why his substantial rights were affected. Correct. Okay. But if I disagree with you on the chain of custody issue, then the bag would have come in even without Eidson and Miller's testimony about where they found the bag and what was inside. And so the bag would come in with your client's cell phone or what appears to be your client's cell phone in there. How then could we find that your client's substantial rights were affected? Well, again, that goes back to the crux of our case, which is our argument, which is that this chain of custody issue, gaps occurring at the very beginning. Here, the government relied on the testimony of an unavailable witness, relied on, excuse me, the hearsay statements of a witness that did not call to testify at trial. The cases that we cited, I think it's Rollins from the Third Circuit and Mayhaw from the D.C. Circuit, we certainly think are instructed because the court makes distinctions between what it calls minor gaps and serious gaps. And even the U.S. Supreme Court in Melendez-Diaz goes one step further in the footnote and says that there are situations where, in the face of a chain of custody objection, that the witness must be called if there's an objection, that the witness, that the testimony must be presented by live testimony. And so we— But here there was testimony presented for at least four links of the chain. It's just that you're missing what you think is a substantial link at the beginning part, right? Correct. That's correct. Let me ask you about this because what you're arguing now is different than your blue brief. Your blue brief says the problem here is the period from the evidence seizure by Edson until it was relinquished to the sheriff's deputies. I looked in your brief to look at the four-day gap between the throwing down and Edson saying he got it on the 20th. Okay. And I didn't see you really argue about that four days. You're talking about from the time the bag was discovered to the time it got to the sheriff is what I read your brief. Is that incorrect? And so, Your Honor, to the extent that I certainly didn't intend to put that in my brief, my frame of reference was that there was a four-day delay between the time that the chase occurred and the time— You are arguing the delay between the, I guess, the 20th, the 16th, and the 20th. Yes, Your Honor. Okay. And then the 20th and what happened after that. Let me ask you about another fact that comes in without any hearsay. Chapman testified he got a call that there was a bag and he went there and got a bag. And so, Chapman also corroborates the bag because he goes and he can testify about what Chapman did. He went there. He met with, on Highway 82, at this store where they had found some things, okay? And he gets the bag. He said, who did you get it from? I got it from both of them were right there, Edson and Mr. Miller. And then we know he took it to Colonel Price and Price then gave it to the evidence custodian who called in Buchanan. So it seems like Chapman's testimony also corroborates where the bag was picked up. Without getting to any testimony of Edson or Mr. Miller, he can testify what he saw, what he did, and he did so. Well, I think what's important, Your Honor, is that the government needed to prove that this bag was found in a ditch along the chase route. Because anywhere else, I would contend that the question then becomes, well, where did that come from? If the question is, if the argument is, we're proven by circumstantial evidence that because his phone is in this bag, then he had the question. Now, we're going back to Chapman went to the place and picked up the bag there. He can testify that somebody called him, said they got a bag. He went and got the bag, and here's what the bag is. And it was at a store right on the chase route, and it's... But if the... Everything else with the evidence. But if the bag is found, let's just say hypothetically speaking, in the lunchroom, then the question... But it wasn't found in the lunchroom. It was found, Chapman went and picked it up at a store on the chase route. Right. And I'm saying for sake of argument, if the bag is found at the store, but inside the store, then the question becomes, well, how did this bag get inside the store? Who had this bag? Somebody other than my client who was arrested after the chase. So it's certainly, which means that one can infer also that somebody else put the phone in the bag. You've answered my question. Thank you. Okay. You've saved some time for rebuttal. You are on our time. Mr. Walker. Good morning, Your Honors. May it please the Court. Stuart Walker on behalf of the United States. Mr. Brazo wants to carve out a special rule on a chain of custody argument where there are missing links at the beginning of the chain. That's the narrow issue as framed in the blue brief. But we have argued, and we think correctly, that White and Henderson taken together collectively foreclosed that result on that ground for largely the reasons that Judge Luck mentioned. Well, White does seem to suggest that, and it certainly looks to, let me put it this way, White looks to some other evidence that seems to fill in the gaps. And so the question that I think your opposing counsel raises, and it's a good one, is, is that required? In other words, where there is this missing link at the beginning, is our case law saying that there has to be at least something, some indicia that says that this is what it purports to be and is, you know, is what it purports to be and is the item that was in fact linked to the defendant in the case? And so I guess looking at that, let's assume for the moment that is our law, what evidence would fill in that gap here? Well, the circumstantial evidence that you outlined just a moment ago, the car chase, the accomplice testimony, throwing drugs out of the window, that a drug transaction had happened, his cell phone was identifying documents in it, all of that stuff circumstantially leads, I think, to an inference. So the cell phone, I think, is probably your best bet, but everything else, no one really sees a book bag. And a book bag is kind of big if you're throwing that out the window while this whole thing is going on. And the co-conspirator is very clear that she doesn't know anything about a book bag. She just saw, she heard stuff being thrown out, but didn't see what was thrown out. No one is able else to identify it. So without the cell phone, I think you might have more of a problem. The cell phone, I think, is probably your best evidence there, right? Yes, Your Honor. A couple of points. I mean, Deputy Buchanan, I think, can be forgiven for maybe not seeing the backpack. This chase happened at 1115 to midnight, over 45 miles. He sees some things, but he doesn't see a backpack. And the fact that the items were being thrown out and you didn't see exactly what it was doesn't necessarily mean that there's not some additional corroboration. That's correct. That's exactly right, Your Honor. On how to read white, we take the position that the secondary explanation for the confidential informant's testimony that you talk about maybe supplying the missing link, we read that as kind of an alternative holding. If you'll notice, I think the critical word says nonetheless. So what it says is we're dealing with a nontraditional chain of custody argument. Typically, they happen from when the government takes possession of the evidence until it's submitted at trial. This one attacks the missing link before that period. This is nontypical. But nevertheless, the critical language says we apply the same rule in the instant case. So that's the holding is we apply the same rule no matter whether the missing link happens before it comes into the hands of the government or after. And then it says nonetheless, testimony supplies the missing link. In other words, alternatively, even though it doesn't matter, because our cases say you can't attack the admissibility of evidence because of a missing link no matter where it happens, in any event, there was additional testimony. And importantly, they say allowing the informant's testimony to supply the missing link is no different than allowing the connection of physical evidence to the defendant as shown by circumstantial evidence. And that's exactly what we've argued here. So you take the hearsay out altogether and the remaining circumstantial evidence is sufficient to allow for a reasonable inference that this bag and its contents, including the cell phone, the drugs, and the gun, are tied to Mr. Verrazzo even without a testimony from the person who found it. And that's fine. Vince White applied a general rule about this doesn't go to admissibility, but instead to its weight. That's right. And Henderson is even stronger because Henderson applies the same rule without saying anything at all about any testimony that traces what happened to this check. As you rightly pointed out, that was a forged check case. And so the defendant cashed the forged check and then at trial he says, well, you can't prove what happened between the time I cashed it and the time it came into the government's  The insinuation being any number of people could have altered that check and you don't have any testimony. And yet Henderson said, we're not even looking for other testimony because what it said is that's not a proper ground for challenging the admissibility. Now you can argue that to the jury all day, that you shouldn't credit this check as evidence against me because we don't know where it went. And that's perfectly fine to do. And I want to underscore this point as the Court reviews the record in this case, and I think it's telling. In the closing argument to the jury, Mr. Verrazzo's lawyer did not say, you know, you need to think about the reasonable doubt here because Mr. Eitzen could have manufactured this book bag or gotten it from some other place. Instead, what he said is, I think it's likely that the front seat passenger, the wife, Taylor Perkins, put Mr. Verrazzo's gun in the book bag and threw it out the window. So when Mr. Verrazzo's own lawyer is arguing what should be inferred from the evidence, he sort of takes it as a given the bag is in the car. He's just saying Mr. Verrazzo was not responsible for the contents and therefore didn't possess it. But he's having to deal with the ruling that it's in. I mean, he challenged it being in, but once it's in, he's got to deal with it. I don't want to blame him for that. I'm not blaming him for that. My only point in saying that is what it was in. And what that means is he could attack, he could attack the book bag as having been, you know, found by Mr. Eitzen anywhere in Georgia and just brought to the ditch to set him up or scooping up stuff and putting it in there. In fact, what he says, though, is he says, and I don't have it right in front of me. But if you'll go to the closing argument, what he says is, we have Mr. Eitzen finding this bag. Now, did he go in the ditch and collect up some evidence, including phone and drugs, and put it in the bag? He said, essentially, I don't think that's likely. Let me tell you what's more likely. What's more likely is the bag is in the car, Taylor Perkins puts the phone in there and throws it out the window. So my only point in saying that, all of that stuff is fair game. But I think it's telling that there's not an allegation that, well, this thing sat there for four days and we have no idea where it came from. Even his own lawyer is saying, it came from the car. But he's not responsible. So why didn't the government call Eitzen or Miller? I spoke with my colleague who tried the case, Your Honor. I'm just curious because it seems like we wouldn't even be here. That was one of the very first questions I asked when I picked up this case. I'm just curious. Yeah. There were a number of attempts made to locate him and he was unlocatable. He broke several appointments to speak with the government. The government had a hard time locating him and finally made the decision that we could prosecute the case without his presence. So if you take it, if you take it that White and Henderson collectively foreclosed the chain of custody argument that Mr. Barraza makes, I think necessarily that dictates that you reject the plain error argument on the hearsay testimony because, as Judge Land pointed out, the book bag and the contents were coming in regardless of the hearsay. It didn't depend on that. And if that's true, then he can't meet his standard under the third prong of plain error to say that but for the hearsay, the result of the trial would have been different. And related to that, but for the hearsay, the evidence introduced at trial wouldn't have come in. That doesn't follow. And so I'm happy to answer any questions the panel might have. But if there are none, then the government would rest on its brief and ask the panel to affirm the conviction. Thank you. Mr. Moore, you have three minutes. Thank you again, Your Honors. Just briefly, I wanted to speak to Judge Hull's question of, you know, why would the government not call Mr. Edson and, of course, the response is that he was unlocatable, been a trial lawyer for 30 years. And generally, when a witness, there's a reason that a witness doesn't want to be located generally. And generally, when the government doesn't call witnesses, I think it's because there are problems. There are problems that can be attacked, that can be cross-examined, and their stories can be challenged. And so that's one of the problems here is that, you know, he's telling, he's reporting to having have found this bag. And certainly, our issue is with the circumstances, the condition, because the cell phone was inside the bag and there was nothing else inside the bag tying the bag to my client. I just want to urge that this Court would follow the rationale of the Supreme Court in Melendez-Diaz in the footnote when, again, specifically when it talked about that it is up to, the Court said, it is up to the prosecution to decide what steps in the chain are so crucial as to require evidence. But what testimony is introduced must, if the defendant objects, be introduced live. Here, Verezo's counsel clearly objected to the chain of custody on the grounds that the individual who found the book bag was not a part of the government's chain of witnesses. But they did present four live witnesses detailing the chain of custody. In other words, I just don't see this as a Melendez-Diaz situation, which deals with the confrontation clause. Here when challenged, they put four witnesses up. In fact, the District Court very carefully says, I'm not admitting this yet until I hear from more people which tell me about the book bag. After all those folks testify, the District Court says, I am now satisfied, and then admitted the book bag into evidence, as I understand the record. And so I don't see this as a confrontation case. I see this more as an evidentiary case of whether the evidence rules have this rule that you've stated, which is either an initial gap or a substantial gap, which breaks the chain such that it's no longer admissible. We agree. It's not identical to Melendez. But the Court's rationale in that footnote is instructive, especially because just before that, the Court says, it agrees, it is not the case that anyone whose testimony may be relevant in the chain must appear in person. But it goes on to say the second portion that I just quoted. And so we would, again, with that, we would rest on our briefs and ask that this Court reverse Mr. Verrazzo's convictions. Thank you. Thank you. Thank you, Ms. Moore. We note you were court appointed, and we appreciate you accepting the appointment and discharging your duty today. Thank you, Your Honor. I appreciate the opportunity to appear. Thank you. Thank you. All right.